NEWMAN, Circuit Judge,
concurring in the remand, dissenting in part.
The court today vacates the decision of the International Trade Commission on the ground that the Commission misapplied the test set forth in SKF USA Inc. v. International Trade Commission, 423 F.3d 1307 (Fed.Cir.2005). I agree that SKF was not correctly applied, and I agree with the remand for its reapplication in accordance with Part B of the court’s opinion. In SKF this court held that the owner of the United States “SKF” trademark could not exclude authentic bearings made by SKF companies in other countries, because although the foreign-origin products were materially different in the amount of customer service they received in the United States market, only 87.4% of SKF USA’s sales were of domestic manufacture, and thus did not meet the “all or substantially all” criterion set by the court. In contrast, applying this reasoning to the German-manufactured forage harvesters marked with the German “Deere” trademark, the “all or substantially all” criterion may well be met. Since the SKF rule is controlling precedent, on that basis I agree that a remand is in order for application of the correct percentage.
I respectfully dissent, however, from the analysis and conclusions in Part A, in which the panel majority holds that the importation and sales of the German-manufactured “Deere” harvesters are deemed to be authorized by Deere-US. Section 1337 of the Tariff Act prohibits “[t]he importation into the United States, the sale for importation, or the sale within the United States after importation by the holder, importer, or consignee, of articles that infringe a valid and enforceable United States trademark,” “if an industry in the United States, relating to the articles protected by the ... trademark, ... exists or is in the process of being established.” 19 U.S.C. § 1337. The majority’s analysis misperceives various aspects of trademark law and Tariff Act law. The reliance in Part A of the court’s opinion on such matters as the relation of the trademark infringement issue to such aspects as the existence of the machinefinder.com website, the occasional financing of a foreign harvester by Deere’s independent finance company, and the question of whether European law precludes imposing restraints on European sales for export, is irrelevant. The court improperly requires the trademark owner to prove that it tried and was unable to impose restrictions on its independent official dealers both in the United States and overseas. Trademark infringement is not averted because a consumer is not confused as to the source of the infringing goods. None of these aspects constitutes authorization to infringe. Nor does § 1337 require the holder of a valid United States trademark to exhaust all other possible remedies or controls before seeking exclusion under the Tariff Act. Deere’s persistent nine-year litigation to exclude these imports of itself negates any inference that Deere consents to the importation.
In Part A this court now affirms the Commission’s reasoning that “apparent au *1363 thority should suffice to find sales ‘authorized’ ” because it furthers “one of the policies underlying trademark law — avoiding third-party confusion in the marketplace.” Majority Op. at 1357. However, the Supreme Court made clear in A. Bourjois & Co. v. Katzel, 260 U.S. 689, 692, 43 S.Ct. 244, 67 L.Ed. 464 (1923), that the holder of a United States trademark has the right to exclude authentic foreign goods bearing an authentic foreign mark, even when there is no consumer confusion as to the origin of the goods. Further, § 1337 is designed to prevent economic injury to a domestic industry. Thus I do not endorse Part A of the court’s opinion, for it is incorrect to hold that the infringing sales are “authorized” by a concoction of “apparent authority.”
Nonetheless, as the court explains in Part B, even on its theory that all of the official dealers’ sales of foreign Deere forage harvesters are “authorized,” and using the highest estimated number of “authorized” foreign Deere forage harvesters in the United States as discussed in Part A, between 96-97% of the total “authorized” forage harvesters in the United States are of United States manufacture.[1] I agree with Part B that the Commission miscalculated this percentage. The applicability of the SKF criterion of “all or substantially all” is not disputed by any party or by the Commission, and is binding on this panel. On this precedent, I concur in the court’s vacatur of the Commission’s ruling and remand.

. Absent reliance on “apparent authority," fewer sales — if any — can be deemed “authorized.” The ITC’s administrative law judge found that only 0.45% of foreign Deere forage harvester sales in the United States were authorized and that 99.55% of the total authorized forage harvesters in the United States were of United States manufacture. In re Certain Agricultural Vehicles and Components Thereof, No. 337-TA-487 (Int’l Trade Comm'n Dec. 20, 2006) at 33.